————o————

No. 6001.

## GEORGE S. YERGER vs. WESTERN UNION TELEGRAPH COMPANY.

### Syllabus.

When an error in the name of the sender of a telegram suggesting "that it might pay to sell a little" cotton influences the receiver of the telegram to sell his cotton for future delivery; and the receiver the next day discovers the error and buys cotton to hedge at a higher price, the telegaph company is not liable for the excess in price when the error in the name is only the remote cause of the loss.

Appeal from the Civil District Court, for the Parish of Orleans, Division "C," No. 103,100. Hon. E. K. Skinner, Judge.

T. M. & J. D. Miller, for plaintiff and appellant.

Howe, Fenner, Spencer & Cocke, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiff claims damages from the defendant for wiring him a message in which there was an error in the name of the sender.

The message wired by defendant was as follows:

"New Orleans, La., 11-18-12.

"To G. S. Yerger,                    Mounds, La.

"March now twelve eleven might pay to sell a little.

(Signed)   "J. M. P. & Co."

On receipt of this message plaintiff asked that it be repeated. It was done and repeated in the same words.

On receipt of said message plaintiff, believing it came from John M. Parker and Company, wired to them to sell 200 bales of cotton for March delivery, and also sent the following wire:

"Albert S. England,

"If you think advisable sell two hundred.

(Signed)   "Geo S. Yerger."

Albert S. England is a member of the firm of J. M. Harrison & Co. J. M. Parker & Co. and Albert S. England each sold two hundred bales, making 400 in all.

The next day, November 19th, Yerger came down to New Orleans, and was informed by John M. Parker &

Co. that they had not sent him any message on November 18th, subsequent investigation revealed the fact that the message of that day had been sent by "J. M. H. & Co., standing for J. M. Harrison Co., and that the defendant telegraph company had made an error in the signature to the telegram by substituting to the telegram a "P" in the place of the "H."

Thereupon plaintiff bought 400 bales March cotton to protect himself, but in the meantime cotton had gone up, and he had to pay $755 more for the same. For this excess of value plaintif seeks to hold the defendant liable.

He alleges that he is engaged in the business of buying and selling cotton in Mounds, La.; that his factors in the City of New Orleans are John M. Parker & Company; that they had cotton in their hands for sale for him; that they are among the largest handlers of cotton in the world, and that by their experience and business affiliations in all part of the world they are in better position than he is to judge of the cotton market and that he "highly valued any advice concerning the sale of cotton which his factor might give, and was justified in so valuing such advice and in deciding to act thereon;" that defendant was grossly negligent in delivering to petitioner the said false and misleading telegram, and in assuming to verify the same, and that otherwise petitioner would not have sold the said 400 bales of cotton or sustained the said loss." It is not disputed that the receiver of a telegram has a right of action against the telegraph company for an error in its transmission.

37 Cyc., 1720; 25 A., 383.

We will pretermit the question of liability of the defendant company for substituting one letter for another in a signature and the slight difference of sound which

— 154 —

may exist in the transmission of the letter by telegraph for which there is authority.

**154 U. S., 28.**

But we rest our opinion upon the uncertain or problematical effect of the telegram sent to plaintiff. In order to succeed we must believe absolutely that he would not have sold any cotton if he had known that the message came from J. M. Harrison & Co., and that he was impelled wholly by the advice of J. M. Parker & Co., in selling.

In so far as the sale of 200 bales made by England is concerned, we think it clear that the defendant is not liable, because the order to him shows upon its face that he leaves the sale to their judgment, "if you think advisable sell 200." It was not therefore exclusively upon the advice of Parker that he sold, but upon the advice of England as well.

In so far as the 200 bales sold by Parker are concerned we have not seen the order to sell addressed to them. But if it was a peremptory order to sell, it does not follow that plaintiff exercised no discretion or judgment in giving the order. He was not irresistibly guided by their advice in his transactions, he had twenty years of large experience in the business; he was in touch wth the cotton market by telephone and by telegraph; he was not advised by Parker alone, the evidence is he consulted also J. M. Harrison, Albert S. England, and Hayward & Clark; and he testifies that he exercises his own judgment "to a great extent," "although he values Parker Company's advice higher than anybody on earth when it comes to cotton," but he does not say that he always buys or sells cotton when he is so advised by Parker; he says his opinion on that question is derived "from all sources." The telegram itself is only a suggestion that

it "might pay to sell a little;" it has not even the dignity of an advice to sell. It is true that the plaintiff says that if he had not received the telegram he would not have sold the cotton; but we believe that he was only influenced by the telegram. We cannot place the defendant at his mercy. If cotton had gone down, he would cheerfully have taken advantage of the error; because cotton has gone up, he would make the company bear his loss. In order to decide for plaintiff, it would be incumbent upon us to pass absolute judgment upon what plaintiff would have done if the telegram had been correctly transmitted as coming from J. M. Harrison & Co., and to decide that plaintiff would not have been guided by it, and would then not have sold his cotton. This we cannot do.

In **Hughes vs. Western Union, 19 S. (N. C.), 100,** the facts bear a great similitude to those of the instant case. The syllabus reads:

> "Where the incorrect transmission of a telegram caused plaintiff to sell shares of stock for which he received the market value his damages are limited to the cost of the message, though a few days later he was compelled, in order to buy shares of the same stock, to pay an advanced price."

Judgment affirmed.

Opinion and decree, March 23rd, 1914.

Rehearing refused, April 20th, 1914.

Writ denied, May 26th, 1914.

# PETER G. RIDDELL vs. ALFRED E. RINGE.

## Syllabus.

1. The unsupported presumption of notice of delinquency resulting from the declarations of the tax deed, must yield to the positive denial of notice by the taxpayer.

2. "Even if a person who commenced his possession of an estate for another, should entertain the intention of no longer holding for that other, but for himself, yet shall he still be presumed to hold possession for the person for whom he originally took it."

   R. C. C., 3446.

3. Where the tax debtor was in actual possession at the time of the tax sale and continues to retain such possession, the prescription embodied in Article 233 of the Constitution of 1898 does not run in favor of the tax title.

Appeal from the Civil District Court, for the Parish of Orleans, Division "D," No. 100,947. Hon Porter Parker, Judge.

Frank W. Hart, for plaintiff and appellant.

A. Voorhies, J. Gross and L. Depoorter, for defendant and appellee.

His Honor, EMILE GODCHAUX, rendered the opinion and decree of the Court, as follows:

Plaintiff, who seeks in this proceeding to confirm his tax title, appeals from a judgment in favor of the defendant, the tax debtor, sustaining the latter's assault upon and annulling the tax sale upon which plaintiff's title is based.

Defendant urges many grounds for annulling the tax sale, but one only need be noticed, namely: that no notice

of delinquency and intended sale was served as required by law.

The only proof submitted by plaintiff of the service of such notice, is the declaration to that effect contained in the tax deed itself. The officer whose duty it was to make the service did not testify, nor was his return, if any existed, put in evidence. On the other hand, defendant as a witness denies that any notice was served upon or received by him.

Under such circumstances we must conclude that the law as to this notice was not observed, for the unsupported presumption arising from the declaration of the tax deed must yield to the positive denial of the tax debtor.

### In re. Nylka Land Company, etc., 8 Court of Appeals, 151.

The prescription embodied in Article 233 of the Constitution of 1898, affords no protection to plaintiff.

Defendant acquired title and physical possession of the property in 1883 and still retained same at the time of the tax sale in 1900. Shortly thereafter he delivered possession to two parties to whom he had agreed to sell the property, and he permitted them to continue in possession even after they had rejected the title and had declined to carry out their promise of purchase.

Opinion and decree, March 23rd, 1914.

Writ denied, April 28th, 1914.